# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Sullivan,               :
            Petitioner     :
                               :
        v.                  :     No. 204 M.D. 2020
                               :     Submitted: October 22, 2021
Pennsylvania Department     :
of Corrections,                  :
            Respondent    :


**BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge**
                   **HONORABLE MARY HANNAH LEAVITT, Judge**
                   **HONORABLE J. ANDREW CROMPTON, Judge**


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**         **FILED: December 22, 2021**


Before the Court are the preliminary objections of Respondents Pennsylvania Department of Corrections (DOC), Secretary of Corrections John E. Wetzel (Wetzel), and Superintendent Mark Garman (Garman) (collectively Respondents) to a petition for review (Petition) filed by Petitioner Anthony Sullivan (Sullivan), an inmate at the State Correctional Institution (SCI) at Camp Hill.[1] For the reasons set forth below, we sustain Respondents' preliminary objection based on a lack of jurisdiction and dismiss the Petition with prejudice.

---

[1] Although the Petition identifies DOC as the only respondent in the caption, it further identifies Wetzel and Garman as respondents in the body of the Petition.

# I. BACKGROUND

Sullivan filed his Petition on March 2, 2020, appealing an internal grievance decision rendered by DOC and generally challenging DOC's handling of his books and magazines. More specifically, Sullivan alleges in the Petition that DOC is wrongfully destroying his property pursuant to its mail policy, DC-ADM 803,[2] by ripping the covers off books and tearing out the magazine subscription cards from the books and magazines he and his family purchase through DOC's approved literature vendor. Sullivan recognizes in the Petition that the purpose of the mail policy is to prevent the introduction of contraband into the prison system, but he alleges that the destruction of his property serves no penological purpose because DOC also purchases its books and magazines through the same vendor but does not subject those books and magazines to the same treatment. Sullivan argues that tearing out his magazine subscription cards violates his right under the First Amendment to the United States Constitution concerning freedom of the press and/or freedom of speech. As noted above, Sullivan initially sought relief for this matter through DOC's internal grievance procedure, which grievance was ultimately denied. Sullivan requests that this Court reverse DOC's internal grievance decision and order DOC to stop tearing the covers off his books or return the covers to him after they are torn so he can mend them and to stop ripping out the subscription cards from his magazines and/or make copies of the subscription cards and provide them to him.

---

[2] DC-ADM 803, Inmate Mail and Incoming Publications, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Dec. 21, 2021).

Respondents thereafter filed preliminary objections, which are presently before the Court. Respondents essentially contend in their objections that this Court lacks both original and appellate jurisdiction to consider the Petition and that Sullivan has failed to state a claim for which relief may be granted (demurrer). As to the preliminary objection based on demurrer, Respondents contend that Sullivan's failure to assert a claim based on a constitutionally protected right results in Sullivan having failed to assert a claim upon which relief may be granted. Furthermore, Respondents maintain that DOC has the right to remove book covers and subscription cards as contraband for purposes of security.

## II. DISCUSSION

As set forth above, this matter comes before the Court on preliminary objections, and our review, therefore, is limited to the pleadings. *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007). We must accept as true the well-pled averments set forth in the Petition and any reasonable inferences logically drawn therefrom. *See Pa. State Troopers Ass'n v. Cmwlth.*, 606 A.2d 586, 587 (Pa. Cmwlth. 1992). We need not accept, however, "conclusions of law, unwarranted inferences from [the] facts, argumentative allegations, or expressions of opinion." *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). Nevertheless, given Sullivan's *pro se* status, we engage in a liberal review of the Petition to determine whether he is or may be entitled to legal relief. *See Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984).

Pennsylvania Rule of Civil Procedure 1028(a) sets forth the bases upon which a party may preliminarily object to a pleading, including failure of a pleading to conform to a rule of court, lack of jurisdiction, insufficient specificity in a pleading,

3

and demurrer. As to the last basis, in order to sustain a preliminary objection based on demurrer, it must appear with certainty that the law will not permit recovery on the claim. *Pa. State Lodge*, 909 A.2d at 416. Any existing doubt must be construed against sustaining the objection. *Id*.

## A. Appellate Jurisdiction

After careful review, we agree with Respondents that we lack appellate jurisdiction to entertain Sullivan's Petition in the nature of an appeal from an internal grievance decision. In *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), the Supreme Court of Pennsylvania held that "the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration," and the Commonwealth Court, therefore, does not have appellate jurisdiction to consider "decisions by intra-prison disciplinary tribunals." *Bronson*, 721 A.2d at 358-59. Thus, to the extent Sullivan is attempting to appeal an internal grievance decision, we lack appellate jurisdiction.

## B. Original Jurisdiction

Whether this Court has original jurisdiction to consider the Petition requires further analysis. In *Bronson*, the Supreme Court recognized that this Court's original jurisdiction extends to a narrow line of claims concerning the violation of constitutional rights. Even where constitutional rights are implicated, however, the Supreme Court held that "[u]nless an inmate can identify a personal or property interest . . . not limited by [DOC] regulations and which has been affected by a final decision of [DOC,] the decision is not an adjudication subject to the [Commonwealth C]ourt's review." *Bronson*, 721 A.2d at 359 (internal quotations omitted) (some alterations in original) (quoting *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71

4

(Pa. 1988)).  Accordingly, we must consider whether Sullivan has alleged a constitutional violation as it concerns the handling of his books and magazines.

Sullivan asserts that his claim is subject to this Court's original jurisdiction because DOC's regulation implicates his First Amendment rights to free speech and/or freedom of the press.  As it concerns freedom of speech, "the First Amendment 'ordinarily' denies a State 'the power to prohibit dissemination of social, economic and political doctrine'" and "affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Whitney v. California*, 274 U.S. 357, 374 (1927) (Brandeis, J., concurring)).  The First Amendment guarantees concerning freedom of the press have also been interpreted to mean all individuals are free to publish at their leisure. *See Near v. State of Minn. ex rel. Olson*, 283 U.S. 697, 735 (1931).  Presently, Sullivan has not alleged in the Petition that his speech has been censored or that DOC has somehow prevented him from publishing.  Thus, the First Amendment is not at issue.

As it concerns the rest of the Petition, we fail to ascertain any other cognizable legal claim that Sullivan has raised within this Court's original jurisdiction.  While DOC seemingly interprets Sullivan's action as making a claim under the Fourteenth Amendment to the United States Constitution concerning deprivation of property, the Petition itself does not make any mention of the Fourteenth Amendment nor due process.  The term "due process," nevertheless, appears once in Sullivan's answer to the preliminary objections, but it is mentioned without any explanation as to whether Sullivan is referring to substantive or procedural due process rights under the Fourteenth Amendment.  Moreover, Sullivan does not mention the Fourteenth Amendment nor due process in his brief.  Pennsylvania Rule of Civil Procedure

5

1019(a) provides that "[t]he material facts on which a cause of action . . . is based shall be stated in a concise and summary form." General allegations of wrongdoing, without the support of specific factual averments, fail to meet this pleading standard. *McCulligan v. Pa. State Police*, 123 A.3d 1136, 1141 (Pa. Cmwlth. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016). Thus, Sullivan has failed to develop any due process claim under the Fourteenth Amendment.[3]

Furthermore, Sullivan is not challenging the constitutionality of DC-ADM 803. Rather, Sullivan appears to be making an argument concerning the *reasoning* behind DC-ADM 803 and the necessity of damaging his property for security purposes. This Court, however, does not have original jurisdiction to consider such complaints. In *Dantzler v. Wetzel*, 218 A.3d 519 (Pa. Cmwlth. 2019), *abrogated on other grounds by Feliciano v. Pennsylvania Department of Corrections*, 250 A.3d 1269 (Pa. Cmwlth. 2021), we held that "[a] prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protection." *Dantzler*, 218 A.3d at 524 (alteration in original) (quoting *Orozco v. Pa. Dep't of*

---

[3] Even if Sullivan had properly raised this issue as a Fourteenth Amendment property deprivation claim, our case law makes clear that "[DOC] has broad discretion to fashion policies about what property inmates may possess[] and to modify those policies as security needs evolve or change." *O'Toole v. Pa. Dep't of Corr.*, 196 A.3d 260, 267 (Pa. Cmwlth. 2018) (holding that inmate did not have constitutional right to his boots in light of DOC's discretion concerning safety policies). Furthermore, DOC's actions are consistent with its regulation, set forth at 37 Pa. Code § 93.2. Subsection (g)(1) of the regulation provides that "[a] publication review committee consisting of staff designated by and reporting to the facility manager or a designee shall determine whether an inmate may receive a publication," 37 Pa. Code § 93.2(g)(1), and it would seem that DOC's removal of subscription cards as contraband furthers DOC's requirement that inmates receive approval for receipt of any publications. Subsection (g)(8) of the regulation provides that "[c]overs of hardbound publications may be damaged or removed during inspection in the discretion of mailroom staff," 37 Pa. Code § 93.2(g)(8), and, therefore, DOC's removal of the book covers during inspection is consistent with DOC's regulation.

*Corr.* (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014), slip op. at 4-5); *see also Feliciano*, 250 A.3d at 1275 n.9 (explaining DOC's "regulations do not, in themselves, confer upon inmates any actionable rights"). Indeed, as the Supreme Court recognized in *Bronson*, "internal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Bronson*, 721 A.2d at 358. Thus, to the extent that the Petition raises complaints regarding the propriety of DC-ADM 803, the Petition has not stated a claim for relief within our original jurisdiction.

Because the Petition does not raise any other issues that could be interpreted as claiming that DOC's actions violate Sullivan's constitutional rights, we conclude that we lack original jurisdiction to consider the Petition.[4]

### III. CONCLUSION

For the foregoing reasons, we conclude that we lack original and appellate jurisdiction to consider the Petition. *See Bronson*, 721 A.2d at 358-59. Accordingly, Respondents' preliminary objection based on a lack of jurisdiction is sustained, and the Petition is dismissed with prejudice.

_____
P. KEVIN BROBSON, President Judge

---

[4] As a result of our conclusions that this Court lacks both appellate and original jurisdiction over the Petition, we need not consider further Respondents' preliminary objection based on demurrer.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Sullivan,                              :
                          Petitioner           :
                                               :
          v.                                   :    No. 204 M.D. 2020
                                               :
Pennsylvania Department                        :
of Corrections,                                :
                          Respondent           :

## **O R D E R**

AND NOW, this 22nd day of December, 2021, Respondents' preliminary objection based on a lack of jurisdiction is SUSTAINED, and the petition for review filed by Petitioner Anthony Sullivan is DISMISSED with prejudice.

_____
P. KEVIN BROBSON, President Judge